UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM A. VESPUCCI, | ) | Case No. 5:08 CV 0362 |
| | ) | |
| Plaintiff, | ) | Judge Kathleen M. O'Malley |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

William A. Vespucci filed this appeal seeking judicial reversal under 42 U.S.C. §1383(c)(3) from the administrative denial of supplemental security benefits. At issue is the ALJ's decision dated July 19, 2007, which stands as the final decision of the Commissioner. See 20 C.F.R. §416.1481. Vespucci is a younger individual with limited education and past relevant work as a roofer. He claims disability following a bar fight in September 2002, that caused respiratory failure, closed head injury and multiple bone fractures (Tr. 154, 191). In November 2002 he suffered cervical injury in an automobile collision (Tr. 211, 240). He also sustained rib fractures from a fall from a second-story porch window in December 2002 (Tr. 258, 280). A subsequent lumbar MRI revealed arthritic changes and mild bulging anuli. (Tr. 404). Vespucci also claims major depressive disorder, cognitive disorder, reading disorder, situational anxiety with major depression and suicidal ideation, borderline personality disorder and probable attention deficit disorder.

The ALJ acknowledged only degenerative disc disease of the cervical and lumbar spine, cognitive disorder, depressive disorder and alcohol dependence in remission (Tr. 21). The ALJ based on testimonies from a medical advisor and vocational expert found that Vespucci could no longer

perform construction work, but could perform unskilled work requiring medium exertion physically as a kitchen helper, laundry laborer and production assembler. (Tr. 30).

Vespucci challenges this conclusion raising four contentions including that the degree of impairment meets §1.04 and §12.05 of the Listings of Impairment from Appendix 1.

*Standard of Review:*

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

**A. THE ALJ ERRED BY NOT EVALUATING PLAINTIFF'S IMPAIRMENTS UNDER LISTING 12.05 AND BY NOT FINDING THAT PLAINTIFF MET THE SAME LISTING.**

**D. THE ALJ ERRED BY NOT EVALUATING PLAINTIFF'S IMPAIRMENTS UNDER LISTING 1.04A AND /OR ERRED BY NOT HAVING A MEDICAL EXPERT SKILLED IN ORTHOPEDICS AT THE HEARING.**

*§12.05C of the Listing of Impairments:*

At the third regulatory step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.").

Vespucci contends that the ALJ failed to adequately address whether his impairments met or medically equalled §12.05C which begins with the requirement of an IQ test score in the range of 60 to 70. [1] His 2004 IQ scores were performance 62, verbal 75 and full scale 66 (Tr. 375). However, in order to meet the requirements of mental retardation the onset of "significantly subaverage general

---

[1] **12.05 Mental retardation**: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]
20 C.F.R. Pt. 404, Subpt. P, App. 1

4

intellectual functioning with deficits in adaptive functioning" must occur **before** age 22. *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir. 2001); *Daniels v. Commissioner of Social Security*, 70 Fed. Appx. 868 (6th Cir. 2003). The only IQ score he has before age 22 is a full scale score of 73, which exceeded the threshold of "significantly subaverage general intellectual functioning" Further, "[a]daptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. See *Heller v. Doe by Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)." *West v. Com'r Social Sec. Admin.*, 240 Fed.Appx. 692, 698, 2007 WL 1991059, *5 (6th Cir.2007). (Tr. 75). Vespucci offers no evidence in these areas prior to age 22. The ALJ made a general finding that Vespucci did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.* This minimal statement is generally regarded as sufficient. See *Gooch v. Sect'y of Health and Hum. Services*, 833 F.2d 589, 591-92 (6th Cir. 1987)(*per curiam*), *cert. denied*, 484 U.S. 1075 (1988). Subsequently, the ALJ did identify specific listed impairments but omitted mention of §12.05C. However, the preamble in the analysis of mental impairment did make the minimal statement concerning listed impairments and this is sufficient given the lack of evidence offered by Vespucci to contradict the ALJ's conclusion regarding listed impairments.

As a result, the burden to establish that a claimant meets or equals a listed impairment is upon the claimant. *Land v. Secretary*, 814 F.2d 241, 244 (6th Cir. 1986); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). "For a claimant to show that his impairment matches a listing, [the claimant] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify (emphasis in original)." *Sullivan v. Zebley*, 493

5

U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990); and see *Hale v. Secretary*, 816 F.2d 1078, 1083 (6th Cir. 1987). Vespuccci carries that burden and his evidence fails to conclusively establish that the severity of his condition manifested itself during his youth in order to meet the requirements of §12.05C.

*§1.04A of the Listings:*

Vespucci similarly in his argument in support of meeting the requirements under §1.04A does not establish evidence of "compromise of a nerve root . . . or the spinal cord [w]ith . . . nerve root compression. [2] Further as *Foster* explained the ALJ does not err by not having a medical advisor specialist without establishing an abuse of discretion. See *Foster v. Halter,* 279 F.3d at 356. The ALJ did make the minimal conclusion with regard to the listed impairments and Vespucci has not come forward with evidence specific to either listing to establish that he met them. Accordingly, the ALJ's decision is supported by substantial evidence.

*Medical equivalence:*

With respect to equivalency, the record contains both physical and mental residual capacity assessments from state agency physicians. (Tr. 296-308, 379-394, 395-399). Administrative

---

[2] 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . .

20 C.F.R. Pt. 404, Subpt. P, App. 1

6

consideration of medical equivalence must include consideration of the opinion given by medical or psychological consultants designated by the Commissioner.  See 20 C.F.R.  §416.926(c) and (d).  This designated consultant's opinion presents a formidable obstacle because, " long standing policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180 at *3.  Specifically in regard to mental impairment, 20 C.F.R.§416.920a  requires rating the degree of functional limitation in accordance with the prescribed psychiatric review technique (PRT).  The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments.  20 C.F.R. §416.920a(c)(3) incorporates assessment of severity as described under §12.00C of the Listing of Impairments of Appendix 1.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C.  Those reports provided substantial evidence for the ALJ's finding that no combination of  impairments was equivalent to a listed mental impairment or §1.04A.

**B.  THE ALJ ERRED BY FINDING A RESIDUAL FUNCTIONAL CAPACITY THAT DOES NOT PROPERLY INCORPORATE ALL OF PLAINTIFF'S LIMITATIONS, INCLUDING THE NON-EXERTIONAL LIMITATIONS REGARDING PLAINTIFF'S DEPRESSION/ANXIETY**.

The ALJ found that Vespucci suffered only mild restriction in his activities of daily living, moderate difficulty in social functioning and moderate difficulty in concentration, persistence, or pace (Tr. 22). The ALJ gave "lesser" weight to the mental residual functional capacity assessment

7

from a state agency physicians. (Tr. 29, 392-93). The state agency psychologists did find moderate restriction in maintaining concentration, persistence and pace (Tr. 389), a finding with which the ALJ had agreed (Tr. 22). However, the ALJ disagreed with the conclusion that Vespucci was moderately impaired from completing a normal work day or work week without interruption due to psychologically based symptoms. Assisted by the medical advisor, the ALJ found that Vespucci had a mental residual functional capacity for simple, repetitive tasks, with instruction provided by demonstration or simple English, and superficial interactions with co-workers and the public with no negotiation or confrontation. (Tr. 23).

As the Commissioner views the matter, Vespucci's argument is a claim that the ALJ ignored Vespucci's prior suicide attempts, the opinions of Dr. Kessler (Tr. 409) and Dr. Evans (Tr. 370-378), ignored Vespucci's psychiatric hospitalization in 2004 for depression and generally failed to appreciate the severity of his mental impairments when crafting a residual functional capacity assessment. Vespucci also points to his global assessment of functioning scores.

First, Vespucci's global assessment of functioning scores [GAF] have varied widely from 20 (when hospitalized in 2004) (Tr. 557) , to 43 (Tr. 368) , 60 (Tr. 378), and 53 (Tr. 616). These scores are not determinative for disability purposes. " [T]he Commissioner 'has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.' *DeBoard v. Commissioner of Social Security*, 211 Fed.Appx. 411 (6th Cir.2006) (quoting *Wind v. Barnhart*, 133 Fed.Appx. 684, 691-92 n. 5 (11th Cir.2005)) (quoting 65 Fed.Reg. 50746,

8

50764-65 (Aug. 21, 2000))." *Kennedy v. Astrue,* 247 Fed.Appx. 761, 766, 2007 WL 2669153, 5 (6th Cir. Sept. 7, 2007).

Second, the ALJ actually relied heavily on Dr. Evans' consultative report (Tr. 28). Dr. Evans evaluated Vespucci in February 2004, prior to his August 2004 psychiatric hospitalization, and concluded there was adequate ability to concentrate and pay attention to tasks, adequate ability to follow simple, repetitive directions, moderate impairment to follow complex directions, mild impairment due to depression to withstand stress and pressure, and adequate ability to deal with the public and relate to others.(Tr. 377).

Third, the ALJ did address Dr. Kessler's statement that Vespucci was unable to complete activities of daily living. (Tr. 409). The ALJ had found mild restriction in activities of daily living based on Vespucci's church attendance, going for rides with his father and ability to care for himself (Tr. 22). The ALJ faulted Dr. Kessler, who was neither a psychiatrist nor psychologist, for not elaborating on what activities Vespucci could not perform, and for not indicating to what extent the patient was limited (Tr. 26). In short, the ALJ provided "good reasons" to discount this opinion from a treating physician. See *Wilson v. Commissioner of Soc. Sec.* 378 F.3d 541, 544 (6th Cir. 2004). The ALJ is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

9

In addition to emphasizing the report from Dr. Evans, the ALJ also relied on the reports from other examining physicians, Dr. Kontos, during a brief September 2004 hospitalization (Tr. 27, 617-620), and Dr. Robb in October 2006 (Tr. 28, 615- 616) (Tr. 29). Dr. Kontos diagnosed "probable" attention deficit disorder, moderate limitations, and decreased attention and concentration "at times." (Tr. 619). Dr. Robb related that Vespucci was learning driving to reobtain his courier license which he lost while in jail, and would represcribe Klonopin when Vespucci was "free of alcohol." (Tr. 615-16).

As for the ALJ's reliance on Dr. Evans, there was no treating psychiatrist's opinion which contradicted Dr. Evans's conclusions. The "treating physician doctrine" had no application to require the ALJ to give more weight to any of the reports. See *Barker, v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the ALJ had substantial evidence from reliance of Dr. Evans' report and the testimony from the medical advisor in formulating a mental residual functional capacity assessment for Vespucci.

*Vocational Expert:*

Vespucci under this topic argues that the vocational expert's testimony was unreliable as a result of lack of appreciation of the full extent of his mental limitations. A vocational expert's opinion cannot constitute substantial evidence unless the expert <u>precisely</u> considers the particular physical and mental impairments affecting claimant. *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987); *McMillan v. Schweiker*, 697 F.2d 215, 221 (8th Cir. 1983). *Howard v. Commissioner*, 276 F.3d 235, 239 (6th Cir. 2002). However, the ALJ is not required to propound a hypothetical question accepting

10

all claimant's allegations as credible. *Varley*, 820 F.2d at 780. Rather the hypothetical question must be based upon factual assumptions supported by substantial evidence from the record. *Id*. Since the mental residual functional capacity found by the ALJ was supported by substantial evidence, it follows that the hypothetical question need not include allegations of a greater degree of impairment due to "probable" attention deficit disorder and the mental residual functional capacity assessment from state agency psychologists.

**C.  THE ALJ ERRED BY NOT HAVING A MEDICAL EXPERT PRESENT AT THE HEARING WHO COULD HAVE TESTIFIED AS TO PLAINTIFF'S PHYSICAL LIMITATIONS. THE ALJ ALSO ERRED BY FINDING THE CLAIMANT NOT TOTALLY CREDIBLE.**

The ALJ determined that Vespucci could perform medium work. Much of Vespucci's third argument was resolved under the discussion of §1.04A. As for credibility, Vespucci testified that he was limited by back pain, leg pain, could not lift as before, and could not sit for prolonged periods. The ALJ relied on a treating physician's report from Dr. Braun from January 2003. (Tr. 25, 291). In a follow-up examination for treatment related to the automobile collision, Dr. Braun indicated that Vespucci was feigning limitation. Despite complaints of pain and difficulty getting around, Vespucci demonstrated "at different times when observed the patient seems to have a very normal gait." (Tr. 291). Otherwise muscle strengths of 5/5 were normal, sensory exam was normal and grips were equal. *Id.* The ALJ certainly had substantial evidence to discredit Vespucci with evidence of exaggerating or "faking bad" in this medical exam. See *Williamson v. Secretary of Health & Human*

11

*Servs.*, 796 F.2d 146, 149-50 (6th Cir. 1986). The ALJ noted also that for the psychological exam by Dr. Evans, ambulation reportedly was within normal limits and Vespucci sat comfortably throughout the examination without appearing to be in physical distress despite claiming incapable of prolonged sitting (Tr. 27, 373). Further 2-days after being given Percocet and Diazepam by Dr. Mikhail, Vespucci appeared for emergency room treatment at Magruder Hospital in Port Clinton, Ohio claiming to have run out of medication (Tr. 25-26, 294). Vespucci denied problems with gait or muscle weakness. [3] *Id.* The doctor noted his suspicions given that Vespucci had traveled from Cleveland, that Vespucci provided a convoluted story to explain why he was in need of Percocet, and that Vespucci's story concerning physical therapy did not ring true. The doctor indicated his disbelief. (Tr. 294). The ALJ accordingly had substantial evidence despite not having a medical advisor to assess physical limitations and had substantial evidence to discredit Vespucci because he was faking, engaging in drug-seeking behavior, and provided inconsistent statements (Tr. 29).

### *CONCLUSION AND RECOMMENDATION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to determining whether there is substantial evidence in the record to support the findings")." *Foster*

---

[3] Inconsistency between medical history and Vespucci's testimony are significant credibility factors. See 20 C.F.R. §416.929(c)(4)(We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ).

12

*v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).   Based on the arguments presented, the record in this matter and the applicable law, the undersigned recommends that the Commissioner's determination denying  supplemental security income be affirmed as supported by substantial evidence.

                s/James S. Gallas
               United States Magistrate Judge

  ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

Dated: January 8, 2009